IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BARBARA D. JOHNSON, individually, and as Parent, Guardian, and Next Friend of E.M., a Minor, </br></br>Plaintiff, </br></br>-vs- </br></br>DILLARD'S, INC., </br></br>Defendant. | ) ) ) ) ) ) ) ) Case No. CIV-05-29-F ) ) ) ) ) |

## ORDER

Before the court is the motion (doc. no. 48) of defendant Dillard's, Inc. for summary judgment on plaintiffs' complaint.[1] Specifically, defendant seeks summary judgment on plaintiffs' claims under 42 U.S.C. §§ 1981 and 1982, and plaintiffs' claims for false imprisonment, defamation and negligent hiring and retention.[2]

---

[1] There are also two pending motions to strike. The first motion to strike was filed by Dillard's on August 25, 2005. In a prior Enter Order, the court stated its intention not to strike affidavits as requested in that motion, and consistent with that statement, Dillard's Motion to Strike Affidavits (doc. no. 61) is now formally **DENIED**. The second motion to strike is included in Dillard's reply to plaintiff's response to Dillard's motion to strike affidavits. The second motion, filed September 14, 2005, asks the court to strike the affidavit of Cynthia Deer (sic), an affidavit which is attached to plaintiff's response to the motion to strike affidavits. The court declines to strike the affidavit, and so that motion (doc. no. 69) is also **DENIED**. Although both motions to strike are denied, the court has taken all of the parties' briefing into consideration in reaching its rulings stated in this Order.

[2] At the hearing which was held in this case on September 19, 2005, counsel for plaintiff advised the court that the discovery matters which were at issue in that hearing need not delay the court's consideration of the pending motion for summary judgment. The court proceeds on that basis.

Section 1981 of Title 42 prohibits racial discrimination in the making and enforcing of contracts. *See* Hampton v. Dillard Department Stores, Inc., 247 F.3d 1091, 1104 (10th Cir. 2001) (quoting S. Rep. No. 101-315 (1990)), cert. denied, 534 U.S. 1131 (2002). To establish a prima facie case under § 1981, a plaintiff must show that 1) she is a member of the protected class; 2) the defendant had an intent to discriminate on the basis of race; and 3) the discrimination interfered with a protected activity as defined in § 1981. *See* Hampton v. Dillard Department Stores, Inc., 247 F.3d at 1101; Shawl v. Dillard's Inc., 17 Fed. Appx. 908, 911 (10th Cir. Aug. 27, 2001) (No. 99-1409). *See also* Arquello v. Conoco, Inc., 330 F.3d 355, 358 (5th Cir.), cert. denied, 540 U.S. 1035 (2003); Garrett v. Tandy Corp., 295 F.3d 94, 98 (1st Cir. 2002); Morris v. Dillard Department Stores, Inc., 277 F.3d 743, 751 (5th Cir. 2001). The activities protected by § 1981 include the following: 1) the right to make and enforce contracts; 2) the right to sue, be parties, and give evidence; 3) the right to the full and equal benefit of the laws; and 4) the right to be subjected to like pains and punishments. 42 U.S.C. § 1981(a); Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1267 (10th Cir. 1989). The allegedly protected activity in this case is the right to make and enforce contracts, which right includes "the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Defendant asserts on the basis of the deposition testimony of plaintiffs that, inter alia, defendant did not interfere with plaintiffs' actual ability to contract with or to purchase from Dillard's. This is so, it asserts, because "[a] claim for interference with the right to make and enforce a contract must allege the actual loss of a contract interest, not merely the possible loss of future contract opportunities." Defendant's brief at pp. 13-14, quoting Morris v. Office Max, Inc., 89 F.3d 411, 414-15 (7th Cir.

1996) (citing Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262 (10th Cir. 1989)). Defendant asserts that plaintiffs' failure to provide evidence of an actual loss of a contract right, including Barbara Johnson's admission that she and E.M. did not even attempt to make a purchase, bars any claim for interference with the right to contract under § 1981 or to purchase property under 42 U.S.C. § 1982.

Plaintiff E.M. testified that after she tried on some clothes in the "Juniors" section of Dillard's, she put the clothes back and told her mother that she "was going to wait until we get some more money." E.M. Deposition (Ex. "B" to defendant's brief) at p. 16. She further testified that after she and her mother left the "Juniors" department they went to the men's department and then the shoe department. *Id.* at 18. She testified that she didn't find any shoes there that she wanted to purchase. *Id.* at 40. She also testified that her mom did find some shoes that she would have liked to purchase but that "[s]he didn't want to buy any because we didn't have the money." *Id.* at 40-41. She also testified that she and her mother were going to get some sunglasses but they didn't – they were "just looking." *Id.* at 41. She testified that her mother initiated an encounter with Jodee Hansen, a Dillard's clerk, in the jewelry department. *Id.* at 19. Jodee, according to plaintiff E.M., did not ask plaintiffs to go to her office. *Id.* at 25. E.M. further testified that nobody stopped her and her mother from making a purchase or asked them to leave the store. *Id.* at 30. She also testified that she was never handcuffed, arrested or told she had to stay in Dillard's, *id.* at 64, and that no one ever prevented E.M. from leaving Dillard's at any time that she wanted to leave. *Id.* at 65.

Plaintiff Barbara Johnson, the minor plaintiff's mother, testified that if there was buying done at Dillard's the evening of January 7, 2004, she was the one who would be doing the buying. Deposition of Barbara Johnson (Ex. "A" to defendant's

brief) at pp. 54-55. Mrs. Johnson testified that after her daughter tried on clothes in the "Juniors" department, she came out and told Mrs. Johnson that a lady thought she was stealing because the lady was whispering to another lady, saying she thinks I'm stealing and that she (E.M.) wanted to go, that she didn't want the clothes and to just put them back. *Id.* at 62-63 & 64. She testified that she did not go to purchase the items in the "Juniors" department, but put them back. *Id.* at 64. She testified her daughter did not want the items she tried on in Juniors. *Id.* at 68. She further testified that she didn't attempt to purchase anything in the Juniors department and that no one prevented her from buying anything. *Id.* at 107-08. Plaintiff Barbara Johnson testified that she stopped Jodee, the sales clerk, and asked her if she thought E.M. and her were shoplifting and if the clerk thought E.M. had something on under her clothes. *Id.* at 81, 83-86 & 89-90. She further testified that the individual she thought was the store manager, Victoria, joined the discussion between her and Jodee. *Id.* at 83-86 & 89-90. She testified that no one at Dillard's handcuffed her or told her she couldn't leave the store and no security guard approached her. *Id.* at 112. She admitted that while she and E.M. were at Dillard's that evening, she didn't purchase or return anything or try to purchase or return anything because her daughter didn't want to buy anything. *Id.* at 115.

The foregoing testimony reveals that during the time that plaintiffs were in Dillard's on the evening of January 7, 2004, they never purchased or attempted to purchase or return any merchandise and were not prevented in any way from purchasing any merchandise. However, the plaintiffs have submitted affidavits with their response to defendant's motion. In plaintiff E.M.'s affidavit, she attests in relevant part as follows:

> After trying on some clothes, I told my mother that Dillard's employee "Jodee" was scaring me, and that I wanted to go home.

>       However, my Mother insisted that we at least buy some shoes for me before leaving Dillard's.
>
>       But, as we were walking from the "Junior's" department to the shoe department, Jodee stopped me and kept us from going to the shoe department. She would not let us proceed until my mother lifted my clothes.
>
>                               . . .
>
>       Jodee made me very scared and embarrassed and ashamed and I began to cry. All I could think about was wanting to go home.

Affidavit of E.M. (Exhibit to plaintiff's brief) at pp. 2-3.

Plaintiff Barbara Johnson, in her affidavit, attests as follows:

>       My daughter and I stopped in the "Junior's" department so that my daughter could try on some clothes to purchase.
>
>       After trying on some clothes, my daughter reported that Dillard's employee "Jodee" was scaring her, and at that point my daughter wanted to go home.
>
>       However, my daughter was in desparate [sic] need of shoes, and I wanted to make at least that purchase before leaving Dillard's.
>
>       But, as my daughter, E.M. and I were walking from the "Junior's" department to the shoe department, Jodee accosted us and prevented us from going in to the shoe department. Jodee accused me and my daughter of shoplifting. Her accusations easily were heard by other employees and shoppers. I know that other [sic] heard the accusations because I spoke to them about it later.
>
>       Jodee required that I permit her to inspect my daughter's clothing. We were prevented from proceeding and detained against our will.
>
>                               . . . .
>                               . . . .

5

> Jodee's discrimination, wrongful detention, and terrible conduct directly impaired our ability to make our purchases at Dillard's. My daughter was terrified, ashamed and afraid.
>
> On January 7, 2004, there was no financial difficulty which would have prevented us from purchasing clothes and shoes for my daughter. We had plenty of money and were at Dillard's to buy needed clothes and shoes.
>
> Jodee's wrongful accusations, outrageous conduct and racial statements were the only reasons we were prevented from buying my daughter's clothes and shoes on January 7, 2004. My daughter was scared, embarrassed and in tears due to Jodee's actions and statements.

Affidavit of Barbara Johnson at pp. 2-3.

Neither affiant affirmatively attests that E.M. and/or her mother attempted to make a purchase at Dillard's and were prevented from completing the purchase by the salesperson's, Jodie's, conduct, that is, the "actual loss of a contract interest" as opposed to "merely the possible loss of future contract opportunities." Hampton v. Dillard Department Stores, Inc., 247 F.3d at 1104. To the extent that it can be inferred from the affidavits that Jodee's conduct prevented plaintiffs from purchasing shoes for E.M. (or both clothes and shoes), or that plaintiff Barbara Johnson's statement that "Jodee's wrongful accusations, outrageous conduct and racial statements were the only reasons we were prevented from buying my daughter's clothes and shoes," affidavit of Barbara Johnson at p. 31, with the result that the affidavits suffice to show the actual loss of a contract interest as opposed to a speculative loss, the court observes that the affidavits conflict with the affiants' prior deposition testimony, both with respect to whether plaintiffs were in any way prevented from purchasing clothes or shoes for E.M. by Jodee's conduct and in their description of plaintiffs' encounter

6

with Jodee. Thus, as defendant at least implies in its reply brief, an issue arises as to whether the affidavits submitted with plaintiffs' response are an attempt to create a sham fact issue. *See* Lantec, Inc. v. Novell, Inc., 306 F.3d 1003, 1016 (10th Cir. 2002); Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986). Generally, an affidavit may not be disregarded because it conflicts with the affiant's prior sworn statements. Franks v. Nimmo, 796 F.2d at 1237. However, if an affidavit which conflicts with prior sworn testimony is an attempt to create a sham issue of fact, it will be disregarded. *Id.* To determine whether an affidavit is an attempt to create a sham issue of fact, a court is to consider three relevant factors: 1) whether the affiant was cross-examined during his or her earlier testimony; 2) whether the affiant had access to the pertinent evidence at the time of his or her earlier testimony or whether the affidavit was based on newly discovered evidence; and 3) whether the earlier testimony reflects confusion which the affidavit attempts to explain. Lantec, Inc. v. Novell, Inc., 306 F.3d at 1016, citing Franks v. Nimmo, 796 F.2d at 1237. *See* Boswell v. Jasperson, 109 Fed. Appx. 270, 274 (10th Cir. Sept. 2, 2004) (No. 03-4277). In this case, the court has no information as to whether the affiants were cross-examined in their earlier testimony. However, it is clear that the affidavits are not based upon newly discovered evidence. The affiants had personal knowledge of the events which occurred on January 7, 2004, at the time they gave their deposition testimony. Moreover, upon review all of the excerpts of the transcripts of E.M.'s and Barbara Johnson's depositions submitted with defendant's briefs, there is no indication of confusion in the deposition testimony which the affiants attempted to explain in their affidavits. Accordingly, the court disregards the affidavits insofar as they attempt to create a sham issue of fact as to whether plaintiffs were prevented from making any purchases at Dillard's by the alleged discriminatory conduct of

7

Jodee or suffered the actual loss of a contract interest. Accordingly, the court finds that no genuine issue of material fact exists as to whether any alleged discriminatory conduct by defendant interfered with plaintiffs' making of any contracts with Dillard's and that defendant is entitled to summary judgment on plaintiff's § 1981 claim.

Defendant is also entitled to summary judgment on plaintiffs' claim under 42 U.S.C. § 1982. To establish a prima facie case under 42 U.S.C. § 1982, a plaintiff must prove the following: 1) that he or she is a member of a racial minority; 2) that he or she applied for and was qualified to purchase personal property; 3) that he or she was rejected or was not permitted to purchase personal property; and 4) that the personal property remained available thereafter. *See* Banks v. Prudential California Realty, 15 F.3d 1082, 1994 WL 6572 at *4 (9th Cir. Jan. 10, 1994) (Nos. 92-56750 & 92-56037). *See also* Asbury v. Brougham, 866 F.2d 1276, 1279-80 (10th Cir. 1989) (listing elements of a prima facie case under the Fair Housing Act and stating that the elements of a prima facie case under § 1982 are the same). Plaintiffs admitted in their depositions that they did not attempt to purchase merchandise at Dillard's and that they were not prevented from doing so. Plaintiffs E.M.'s and Barbara Johnson's affidavits, to the extent they say or suggest otherwise, are disregarded as attempts to create sham issues of fact. No genuine issue of fact exists with respect to the third element of a prima facie case under § 1982.

Defendant asserts in support of its motion directed to plaintiffs' false imprisonment claim that the uncontroverted facts show that neither of the plaintiffs were detained against their will. To establish a claim for false imprisonment under Oklahoma law, plaintiffs must show that 1) they were detained against their will; and 2) that the detention was unlawful. In her deposition, plaintiff Barbara Johnson testified that she stopped Jodee. Deposition of Barbara Johnson (Ex. "A" to

defendant's brief) at p. 18, 84, 108 & 119. She further testified that neither Jodee nor anyone else told her she couldn't leave Dillard's, that no one handcuffed her and no security guard approached her. *Id.* at 112. She further testified that no one asked her to go to the manager's office or a security office or to leave the store. *Id.* at 119. She also said that no one asked to search her. *Id.* at 118-19. Although she also testified that she did feel as if she and E.M. were not free to leave the store and that she felt trapped and as if they couldn't get out, *id.* at 108 and 109, she testified that she felt this way because Jodee was following the plaintiffs and plaintiff Barbara Johnson felt that Jodee was going to check her daughter to see if she had been shoplifting. *Id.* at 108-09. Plaintiff E.M. testified that plaintiffs were never handcuffed by anyone, arrested or told by anyone that they had to stay at Dillard's. Deposition of E.M. (Ex. "B" to defendant's brief) at pp. 64-65. Thus, there is no evidence in plaintiffs' deposition testimony that plaintiffs were actually detained against their will. Plaintiff Barbara Johnson's subjective belief that she and E.M. couldn't leave the store because she believed they were being followed is insufficient to establish actual detention. Plaintiff E.M.'s statement in her affidavit that Jodee stopped her and wouldn't let her and her mother proceed until her mother lifted her clothes, quoted above, is directly contrary to plaintiffs' deposition testimony, as are plaintiff Barbara Johnson's affidavit statements that Jodee accosted the plaintiffs, prevented them from going to the shoe department and detained plaintiffs against their will. Again, applying the factors set out in Franks, supra, and Lantec, supra, to determine whether plaintiffs' affidavits are attempts to create sham factual issues and should be disregarded, the court finds that that is the case. Plaintiffs' affidavits are, therefore, disregarded. There is no genuine issue of material fact as to whether plaintiffs were detained

9

against their will and defendant is entitled to summary judgment on plaintiffs' false imprisonment claim.

Defendant seeks summary judgment on plaintiffs' defamation claim on the grounds that there is no credible evidence of publication, that plaintiffs cannot establish the falsity of the sales associate's statements because her statements were opinions, and that any statements made by the sales associate were privileged because made during the course of the sales associate's discharge of her duty to the organization and made to other Dillard's employees.

In her deposition testimony, plaintiff Barbara Johnson testified that when she had the conversation with Jodee, the sales associate, in which Jodee allegedly said that she thought E.M. had been shoplifting because she was black and that Jodee was paid to follow blacks, there was no one else around because the store was empty at the time. Barbara Johnson deposition at pp. 85-86. However, Mrs. Johnson also testified that there were two ladies that Jodee told about shoplifting, one of whom was Suzette. *Id.* at p. 86. It is clear from the next two pages of plaintiff Barbara Johnson's deposition testimony, however, that the two ladies plaintiff was referring to were Dillard's employees and that there were no other folks (shoppers) there. *Id.* at pp. 86-88. *See* E.M. deposition at pp. 24 and 33.

An unprivileged publication to a third person of an allegedly slanderous statement is an essential element of a slander or defamation claim. *See* Okla. Stat. tit. 12, § 1442; Bird Construction Company, Inc. v. Oklahoma City Housing Authority, 110 P.3d 560, 564 (Okla. Ct. App. 2004) (elements of defamation, of which libel is one form), cert. denied (Okla. 2005); Tanique v. State ex rel. Oklahoma Bureau of Narcotics and Dangerous Drugs, 99 P.3d 1209, 1217 (Okla Ct. App. 2004) (elements of defamation, either libel or slander). However, communications between

Dillard's employees do not constitute publication to a third person for purposes of a defamation or slander claim because such communications are privileged. *See* Thornton v. Holdenville General Hospital, 36 P.3d 456, 460-61 (Okla. Ct. App. 2001), cert. denied (Okla. 2001); Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1552-53 (10th Cir. 1995). Thus, no genuine issue of material fact exists based upon the plaintiffs' deposition testimony: there was no unprivileged publication of the alleged slanderous statements to a third person. In her affidavit, however, plaintiff Barbara Johnson attests that she "believe[s] that this statement [by sales associate Jodee that she stopped plaintiffs because they were black and got paid to watch the black people] was made within the hearing of other shoppers and store employees." Affidavit of Barbara Johnson at p. 3. This statement is insufficient to create a genuine issue of material fact because, again, the court finds it conflicts with plaintiff's deposition testimony and is an attempt to create a sham issue of fact, *see* Franks, supra., and Lantec, supra, and because even if the affidavit is not disregarded, plaintiff has failed to affirmatively state that another shopper or shoppers heard the allegedly slanderous statements and to identify that shopper or shoppers or to submit affidavit(s) from any shoppers attesting that they heard the allegedly slanderous statements. Defendant Dillard's, Inc. is entitled to summary judgment on plaintiffs' defamation claim.

Finally, defendant has moved for summary judgment on plaintiff's claim for negligent hiring and retention, which is predicated upon defendant's alleged prior knowledge of its employees' propensity to discriminate against African American customers. *See* complaint at ¶ 52. Defendant argues that in Oklahoma the tort of negligent hiring, supervision and retention is available only if vicarious liability is not established, and because in this case, there is no issue but that the sales associate was acting within the scope of her employment and Dillard's does not assert otherwise, the

tort of negligent hiring and retention imposes no additional liability on defendant and is unavailable to plaintiffs. Moreover, defendant asserts that plaintiffs make no allegation that defendant, upon hiring the sales associate, had knowledge of her alleged racist tendencies. Moreover, while plaintiff Barbara Johnson stated in her deposition testimony that she was told by some unidentified and unknown employee(s) of Dillard's that the sales associate, Jodee, had written "zillions of comments about stopping blacks, and some she checked," and that she had checked non-legals, Barbara Johnson deposition at p. 117, she admitted that she does not know whether what the employee(s) told her was true.

Plaintiffs in response assert that their negligent hiring and retention claim is based upon the underlying tort claim of intentional infliction of emotional distress. However, they admit that their request for leave to amend their complaint to assert that claim has been denied as untimely. They request that the court reconsider that decision and assert that since there is no vicarious liability of defendant for such a tort, their claim for negligent retention is proper.

For the reasons stated in this court's order of July 1, 2005 [doc. no. 46] denying plaintiffs' motion for leave to file a first amended complaint, plaintiff's request for reconsideration of that order is **DENIED**.

Plaintiffs alleged in their complaint that "[e]ach of the persons that falsely accused, imprisoned and committed other tortious and discriminatory wrongs against the plaintiff and E.M. was an employee of defendant acting at all relevant times within the scope and course of their employment" and that "defendant is vicariously liable." Complaint at ¶ 11. Although defendant generally denied these allegations in its answer, it admits in its brief that its sales associate, Jodee, was at all relevant times acting within the scope of her employment for defendant. Accordingly, defendant's

liability, if any, must be based upon respondeat superior or vicarious in nature; the theory of negligent hiring and/or retention by defendant is not available to plaintiffs as a basis for recovery against defendant.  *See* Jordan v. Cates, 935 P.2d 289, 292-93 (Okla. 1997).  *See also* N.H. v. Presbyterian Church (U.S.A.), 998 P.2d 592, 600 (Okla. 1999).

In accordance with the foregoing, defendant's motion for summary judgment on plaintiffs' complaint is **GRANTED**.

DATED this 27th day of September, 2005.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

05-0029p020(pub).wpd